UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

WILLIAM P. TUCKER, and TUCKER
FAMILY LIMITED PARTNERSHIP,

        Plaintiffs,                      Case No. 3:13-cv-00718-ST

        v.                                ORDER

JERRY WALKER,

        Defendant.

**STEWART, Magistrate Judge:**

      This case involves a dispute between equal owners of two businesses that own and operate a minor league baseball team, including a ground lease on the stadium. Plaintiffs, William P. Tucker and the Tucker Family Limited Partnership ("Tucker"), the silent investors, filed this lawsuit alleging that defendant, Jerry Walker ("Walker"), the active manager, breached various duties to them and seek an accounting under various legal theories. Effective January 21, 2014, the parties entered into a Settlement Agreement that, among other things, requires the parties' cooperation with an analysis of the team's financial records for 2011, 2012, and 2013 by an independent accountant. Esler Decl. (docket #71), Ex. 1. If the accountant "identifies material cash or other corporate assets that have been misappropriated by Walker to the financial detriment of Tucker," then Walker must repay the amount misappropriated and all

1 – ORDER

his legal expenses paid by the businesses in connection with this lawsuit, and also resign. *Id*, p. 4, ¶ 4(a). In addition, the parties "will act in mutual good faith to effect a sale of the Team, with the stadium, [by] December 31, 2014." *Id*, p. 5, ¶ 5. Otherwise, Walker will continue in his current positions with the team and have the right to buy out Tucker's interests in the team. *Id*, p. 5, ¶ 6. Misappropriations are defined as material if they are "in excess of $5,000 in a particular year." *Id*, p. 4, ¶ 4(a).

The parties engaged the accounting firm of Geffen Mesher & Company, P.C. ("Geffen Mesher") which advised against an audit or review and instead proposed to conduct an "agreed-upon-procedures" analysis. *Id*, Ex. 5, pp. 1-2. Under that approach, "[t]he procedures to be performed would be suggested by [Geffen Mesher], and then agreed to by the shareholders." *Id*. Geffen Mesher submitted a draft engagement letter dated August 20, 2014, with recommended procedures (*id*, Ex. 7), but the parties have been unable to agree that those procedures are sufficient for the purposes of the Settlement Agreement.

Each party accuses the other of refusing to cooperate in efforts to implement the Settlement Agreement. Because the accounting review has not yet started, both parties have filed motions to specifically enforce the Settlement Agreement (dockets #63 & #68). After reviewing the parties' submissions and hearing argument on the motions, both motions are granted in part and denied in part as follows:

1. As required by ¶ 3 of the Settlement Agreement, Walker shall provide Tucker within seven days with an electronic copy of the team's "kitchen sink" point-of-sale reports from the "Trax Pro" system which is the source material for the game day reports;

2. As required by ¶ 3 of the Settlement Agreement, Walker shall provide Tucker within seven days with copies of "all of the Team's bank statements," except the inactive US Bank account;

3. The issue of whether Walker has distributed all of the 2013 earnings to Tucker as required by ¶ 8 of the Settlement Agreement is deferred;

4. The parties must immediately request Geffen Walker to issue a revised proposed engagement letter and are specifically required to agree on what Geffen Walker proposes. However, those proposed procedures must include the following:

    a. The $20,000 threshold for errors must be revised to $5,000 in a particular year;

    b. The Settlement Agreement in ¶ 4(a) requires that "the amount misappropriated will be treated as an unequal distribution to Walker (and be a personal obligation of Walker to be repaid to the corporation)" and in ¶ 4(b) requires the team to recover cash or other corporate assets misappropriated by persons other than Walker. To accomplish these requirements, the amount of, as well as the person responsible for, each and every material misappropriation must be identified, not simply those misappropriations identified by a random sampling;

    c. Given the approaching December 31, 2014 deadline and the cost to identify all material misappropriations, Geffen Walker may propose a two-step review, with the first step using random sampling to determine whether the materiality threshold is reached for the purpose of triggering a sale of the team to a third party. However, any random sampling must include those home games, check disbursements, reconciling items and payroll reports identified by Tucker as suspicious. In addition, if the random sampling reveals misappropriations, then a standard must be articulated, either through extrapolation or expansion of the investigation, to determine if the materiality threshold of $5,000 in any particular year is met;

        d.  If Geffen Walker cannot complete the required review by December 31, 2014, then it must provide an estimated completion date to the parties.

DATED  November 19, 2014.

                                              s/ Janice M. Stewart
                                              Janice M. Stewart
                                              United States Magistrate Judge

4 – ORDER